1  Ronald P. Oines (State Bar No. 145016)
   roines@rutan.com
2  Talya Goldfinger (State Bar No. 294926)
   tgoldfinger@rutan.com
3  RUTAN & TUCKER, LLP
   18575 Jamboree Road, 9th Floor
4  Irvine, California  92612
   Telephone:  714-641-5100
5  Facsimile:  714-546-9035

6  Attorneys for Plaintiffs PIPE RESTORATION
   TECHNOLOGIES, LLC and  ACE DURAFLO
7  SYSTEMS, LLC

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  PIPE RESTORATION                         Case No. 8:23-cv-00237-FWS-DFM
    TECHNOLOGIES, LLC, a Nevada
13  Limited Liability Company; ACE
    DURAFLO SYSTEMS, LLC. a Nevada          **PLAINTIFFS' OPPOSITION TO**
14  Limited Liability Company,              **DEFENDANTS' MOTION TO**
                                            **DISMISS OR TRANSFER VENUE**
15            Plaintiffs,
         vs.
16
    FLORIDA DRAIN-LINING                     Date: April 20, 2023
17  SOLUTIONS, LLC, a Florida Limited        Time: 10:00 a.m.
    Liability Company; RONALD               Courtroom: 10D
18  CODDINGTON, an individual; and          Hon. Fred W. Slaughter
    DOES 1 through 10, inclusive,
19
              Defendants.
20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2
**Page**

3   I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................1

4   II.     BACKGROUND.................................................................................3

5   III.    THE LEGAL STANDARD .................................................................6

6   IV.     THE COURT HAS JURISDICTION OVER DEFENDANTS ....................7

7           A.      Coddington Consented to the Jurisdiction of this Court and
                    to the Venue ..................................................................................7

8

9           B.      Defendants Cannot Escape the Court's Jurisdiction by
                    Hiding Behind a New Company ..........................................................10

10          C.      Even Setting Aside the forum Selection Clause, the Court
                    has Personal Jurisdiction over Defendants ...........................................12

11

12                  1.      Defendants have availed themselves of the privilege
                            of conducting activities in California ........................................13

13                  2.      Plaintiffs' injuries arise out of Defendants' forum-
                            related activities ..........................................................................15

14

15                  3.      The exercise of jurisdiction would not be
                            unreasonable ...............................................................................15

16          D.      Even Setting Aside the forum Selection Clause, Venue is
                    Proper in this District ...............................................................................17

17   V.     TRANSFER OF VENUE IS NOT WARRANTED .....................................19

18          A.      Defendants Have Waived Their Right to Argue *Forum
                    Non Conveniens* Through the Forum Selection Clause .....................19

19

20          B.      Even Setting Aside the Forum Selection Clause,
                    Defendants Cannot Show that Transfer is Warranted ........................20

21   VI.    CONCLUSION ...........................................................................22

22

23

24

25

26

27

28

3074/022688-0085
18977344.1 a03/30/23

-i-

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**F**EDERAL **C**ASES

*Access Ins. Co. v. Peralta*,
   No. SACV 15-622-JLS, 2015 WL 13036938 (C.D. Cal. Oct. 13, 2015) ...........5

*Allstar Marketing Group, LLC v. Your Store Online, LLC*,
   666 F. Supp. 2d 1109 (C.D. Cal. 2009)...........................6, 13, 15, 16, 17, 20, 21

*AT&T v. Compagnie Bruxelles Lambert*,
   94 F.3d 586 (9th Cir. 1996) .................................................................................6

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
   571 U.S. 49 (2013) ............................................................................................19

*Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc.*,
   733 F. Supp. 2d 204 (D. Mass. 2010).........................................................16, 18

*Bohara v. Backus Hosp. Med. Benefit Plan*,
   390 F. Supp. 2d 957 (C.D. Cal. 2005)...............................................................21

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .......................................................................6, 13, 14, 16

*Color Switch LLC v. Fortafy Games DMCC*,
   818 F. App'x 694 (9th Cir. 2020).........................................................................9

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*,
   106 F.3d 284 (9th Cir. 1997), rev'd on other grounds ......................................17

*Cooley v. Target Corp.*,
   No. SACV2000876DOCJDE, 2020 WL 7230985 (C.D. Cal. Oct. 12, 2020) . 8, 9

*Corp. Inv. Bus. Brokers v. Melcher*,
   824 F.2d 786 (9th Cir. 1987) .......................................................................14, 17

*Govea v. Monrovia Unified School District*,
   Case No.: CV 17-03093-AB 2018 WL 5915643 (C.D. Cal. June 19, 2018).......5

*Grisby v. DC 4400, LLC*,
   2016 WL 7115903 (C.D. Cal. Dec. 5, 2016).......................................................6

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

**Page(s)**

*Howard v. Everex Sys., Inc.*,
 228 F.3d 1057 (9th Cir. 2000) ............................................................... 11

*Huffington v. T.C. Grp., LLC*,
 637 F.3d 18 (1st Cir. 2011) ........................................................... 8, 9, 10

*Huth v. Hillsboro Ins. Mgmt., Inc.*,
 72 F. Supp. 2d 506 (E.D. Pa. 1999)..................................................... 11

*Int'l Paper Co. v. Goldschmidt*,
 872 F. Supp. 2d 624 (S.D. Ohio 2012)............................................ 18, 19

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945) ............................................................................. 6

*IntelliCAD Tech. Consortium v. Suzhou Gstarsoft Co.*,
 465 F. Supp. 3d 1130 (D. Or. 2020)....................................... 7, 8, 9, 10

*Johns v. Newsmax Media, Inc.*,
 887 F. Supp. 2d 90 (D.D.C. 2012)...................................................... 18

*Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*,
 519 F.2d 634 (8th Cir. 1975) ......................................................... 11, 12

*Mantra Band, LLC v. Circoli Inc.*,
 Case No. 8:19-cv-00464-JLS-ADS, 2019 WL 8108728 (C.D. Cal. Sept. 3, 2019)5

*Mattel, Inc. v. Greiner & Hausser GmbH*,
 354 F.3d 857 (9th Cir. 2003) ............................................................... 6

*Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.*,
 757 F.2d 1256 (Fed. Cir. 1985) .......................................................... 11

*Nat'l Council on Comp. Ins., Inc. v. Caro & Graifman, P.C.*,
 259 F. Supp. 2d 172 (D. Conn. 2003) ................................................ 18

*Nomadix, Inc. v. Guest-Tek Interactive Ent. Ltd.*,
 No. 219CV04980ABFFMX, 2020 WL 1032395 (C.D. Cal. Jan. 23, 2020) ....... 9

*Patin v. Thoroughbred Power Boats Inc.*,
 294 F.3d 640 (5th Cir. 2002) .............................................................. 11

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

**Page(s)**

*Plexxikon Inc. v. Novartis Pharms. Corp.*,
   No. 17-CV-04405-HSG, 2017 WL 6389674 (N.D. Cal. Dec. 7, 2017)............20

*R. Griggs Grp. Ltd. v. Consol. Shoe, Inc.*,
   1999 WL 226211 (N.D. Cal. Apr. 9, 1999)........................................................17

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ........................................................................7, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...........................................................................................7

*Ukpan v. AT&T Mobility Servs., LLC*,
   No. 219CV08112VAPJEMX, 2020 WL 11039193 (C.D. Cal. Apr. 6, 2020)...12

*Valley Children's Hosp. v. Athenahealth, Inc.*,
   No. 121CV01439JLTEPG, 2022 WL 1321416 (E.D. Cal. May 3, 2022) ..........8

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
   901 F.3d 1081 (9th Cir. 2018) ..................................................................8, 9, 19

**FEDERAL STATUTES**

28 U.S.C.
   section 1391(b) ..................................................................................................18
   section 1400(a) ..................................................................................................17

**CALIFORNIA STATUTES**

Code of Civil Procedure
   section 410.10....................................................................................................6

**LOCAL RULES**

California Central District Rules
   rule 7-3..............................................................................................................5

1    **I.       INTRODUCTION AND SUMMARY OF ARGUMENT**

2          Defendants' motion to dismiss or transfer should be denied, primarily because

3    Defendants have explicitly agreed to personal jurisdiction and venue in this Court

4    for this action.  Defendant Ronald Coddington ("Coddington") is the owner and

5    operator of a franchisee-licensee of Plaintiff ACE Duraflo Systems, LLC ("ACE").

6    Pursuant to the License Agreement between Coddington's company, Florida Pipe-

7    Lining Services, LLC ("FPLS"), and ACE, ***Coddington personally agreed***:

8                "the sole forum for litigation arising under this Agreement, ***or any***

9                ***aspect of their [sic] relationship between us*** (even if additional

10               parties are named as parties to that litigation) will be an appropriate

11               state or federal court in California and both Licensor and Licensee

12               waive any objection they may have to either the jurisdiction or the

13               venue of such court . . . ."

14         Defendants do not deny that Coddington personally agreed to this forum

15   selection clause, but rather seek to argue that it somehow does not apply to this case.

16   Defendants are wrong.  Indeed, in an apparent attempt to mislead, Defendants

17   simply remove the most important and dispositive part of the forum selection clause

18   when they purport to quote the clause in the Motion.  Defendants remove the phrase

19   "or any aspect of their [sic] relationship between us" with no explanation.  Motion,

20   pg. 5, ll. 4-7; pg. 17, ll. 13-16.[1]

21         Defendants barely address the forum selection clause in their Motion.  Indeed,

22   Defendant's 21 page Motion addresses the forum selection clause in one page.

23   Motion, pg. 17, l. 8 – pg. 18, l. 9.  Defendants simply argue that "Coddington only

24   consented to this forum for the disputes arising under the license agreement, which

25   

26   ─────────────────────────
     [1]   It is odd that Defendants try to hide this language when they quote the clause in

27   the Motion, given that they acknowledge the entirety of the clause in Coddington's

     Declaration.  Declaration of Ronald Coddington, ECF 16-1 ("Coddington Decl."), ¶

28   8.

means that the [sic] disputes relevant to the licensed business of FPLS."  Motion, pg. 17, ll. 25-27.  However, Defendants simply ignore that language of the forum selection clause and the nature of this action.

Pursuant to the License Agreement, Plaintiffs, among other things, licensed their trademarks, copyrights and other intellectual property to Coddington's company, FPLS.  In this action, Plaintiffs assert that Coddington started a new business for which he simply adopted and used the same trademarks and other intellectual property he obtained and was authorized to use under the License Agreement, and otherwise falsely advertised that his new company was associated with his licensed company, FPLS. This is clearly a case that arises under "any aspect of the relationship" between ACE and Coddington (who agreed individually to be bound by the forum selection clause). This case also arises under the License Agreement.

Since it us undisputed that Coddington is bound by the forum selection clause, the Motion should be denied as to him.  The only remaining question is whether FDLS should also be subject to personal jurisdiction and venue here.  It should.  It is undisputed that Coddington simply lifted Plaintiffs' trademarks and other intellectual property and placed them on FDLS' website, along with Plaintiffs' case studies and other false and misleading content.  Indeed, Coddington even admits that "FDLS website was created based on the original FPLS website on February 2, 2023."  Coddington Decl., ¶ 15.  Coddington's creation of this competing and unauthorized business based on Plaintiffs' intellectual property and good will, and Plaintiffs' lawsuit seeking redress therefor, arises under the license agreement, or at a minimum, relates to any aspect of the relationship between Coddington and ACE. Coddington's argument that FDLS did not previously exist, and therefore was not a party to the License Agreement misses the point.  Coddington's creation of FDLS was the conduit by which he misappropriated Plaintiffs' intellectual property and created a false association with Plaintiffs.  Coddington personally is clearly subject

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE

to litigation in this forum based on the forum selection clause.  The company he created as part of his improper conduct should also be subject to litigation in this forum.

Moreover, even setting aside the forum selection clause, personal jurisdiction over Defendants is reasonable here given that Defendants chose to enter into a long-term franchise relationship with Plaintiffs, who are based in Orange County, California, they could reasonably expect to be brought into court in California by virtue of that relationship, and the claims at issue in this lawsuit arise out of that relationship in that Defendants would not have had access to Plaintiffs' IP if not for the original license agreement.  Venue in this district is similarly appropriate and Defendants cannot meet their burden to show that the exercise of jurisdiction would be unreasonable, or that it would be so inconvenient as to justify transfer.  Indeed, the most that Defendants can say in this regard is that some unknown third party witnesses (who may or may not even be needed in this case) might be inconvenienced if they have to travel from Florida to California.

Defendants hypocritically accuse Plaintiffs of forum-shopping for enforcing a valid forum selection clause.  If anything, it is Defendants who are forum-shopping by attempting to ignore a valid forum selection clause and denounce any relationship with California despite the undisputed facts.  The Court should deny Defendants' Motion in its entirety.

## II.    BACKGROUND

Plaintiff Pipe Restoration Technologies, LLC ("PRT") developed and owns a proprietary system for cleaning and reconditioning pipelines, as well as coating pipelines to prevent corrosion and/or stop leaks, together with other related repairs and services.  Complaint ¶ 9.  PRT owns a robust IP portfolio relating to its business, including numerous patents, registered trademarks, and copyrights.  *Id.* ¶ 10.  Plaintiff ACE has a license to PRT's technology and IP.  ACE, in turn, franchises and licenses such technology and IP to franchisees and licensees

1    throughout the United States.  *Id.* ¶ 11.

2         Defendants Coddington and FPLS (owned and operated by Coddington),

3    entered into a license agreement with ACE, pursuant to which FPLS provides epoxy

4    pipe restoration services for potable water pipes and is authorized to use Plaintiffs'

5    trademarks for such work (the "License Agreement").  *Id.* ¶ 20.  The parties have

6    operated under this License Agreement since at least 2012.[2]  Pursuant to the terms

7    of the license, FPLS pays a royalty and makes advertising contributions to ACE.

8    For its part, ACE provides training, equipment, systems, epoxy, advertising and

9    other assistance for the benefit of FPLS's licensed business.  Complaint ¶ 20.

10        Pursuant to the License Agreement, the parties agreed that any dispute

11   between them "including their respective owners and guarantors" would be litigated

12   in a state or federal court in California, and the parties waived any objection they

13   may have to such venue.  *Id.* ¶ 21; Oines Decl. Ex. A at pg. 21.  The forum selection

14   clause applies to "any aspect" of the parties' relationship.  *Id.*

15        Recently, Plaintiffs learned that Coddington started a new business, defendant

16   FDLS, to offer services relating to drain lines.  *Id.* ¶ 22.  This business, like FPLS, is

17   solely owned and operated by Coddington.  *Id.* ¶ 32.  Yet despite the fact that FDLS

18   is not authorized to use any of Plaintiffs' copyrighted works or trademarks, or to

19   otherwise associate itself with Plaintiffs, FDLS is impermissibly using Plaintiffs' IP

20   and otherwise falsely advertising that FDLS is related to or involved with Plaintiffs.

21   _____

22   [2]   For the purposes of understanding the transfer of rights under the License
     Agreement, Coddington's declaration, submitted in support of the Motion, is

23   instructive.  ACE first entered into the License Agreement with Video Inspections,
     Inc.  Coddington Decl., ¶ 7; Declaration of Ronald P. Oines ("Oines Decl."), Ex. A.

24   Video Inspections, Inc. transferred its rights to Pipeline Restoration Technologies,

25   Inc. in 2005.  *Id.* ¶ 9.  And, in February 2012, Pipeline Restoration Technologies,
     Inc. transferred 100% of its rights, duties and obligations under and pursuant to the

26   License Agreement to FPLS, owned by Coddington.  *Id.* ¶ 10.  In August 2016,
     ACE and FPLS further signed an addendum to extend the terms in the License

27   Agreement for a period of 10 years.  *Id.* ¶ 11; Oines Decl. Ex. B.

28

1   *Id.* ¶¶ 22, 23.

2        Plaintiffs filed the present lawsuit on February 7, 2023.  Two days before

3   their answer was due, Defendants requested an extension on their time to respond.

4   Declaration of Ronald P. Oines, ¶ 6, Ex. E.  On Friday, March 17, one business day

5   before their extended time to respond to the Complaint, Defendants requested a

6   further extension.  *Id.*  When Plaintiffs declined to grant the further extension,

7   Defendants informed Plaintiffs of their intent to file a motion to dismiss and

8   requested a meet on confer on Monday, March 20 – the last day for Defendants to

9   file their motion.  *Id.*  A few hours after the parties met and conferred (*id.* ¶ 7),

10  Defendants filed the Motion.[3]

11       In their Motion, Defendants claim that this Court does not have jurisdiction

12  over them, despite the existence of the forum selection clause and despite the fact

13  that Defendants would not even have had access to the subject IP if not for the

14  License Agreement that they are now trying to avoid.

15

---

16  [3]   Defendants' failure to properly meet and confer is, alone, sufficient grounds to
    deny their Motion.  Local Rule 7-3 provides in relevant part: "The conference shall
17  take place at least seven (7) days prior to the filing of the motion."  This Court's
18  Standing Order states that "[t]he court may strike or outright deny a motion or other
    relief if counsel fails to meet and confer in good faith."  This rule is consistent with
19  how courts regularly enforce the Local Rules.  "A district court has the discretion to
20  strike or deny a motion that fails to comply with the local rules."  *Mantra Band,
    LLC v. Circoli Inc*., Case No. 8:19-cv-00464-JLS-ADS, 2019 WL 8108728 (C.D.
21  Cal. Sept. 3, 2019) (denying motion to dismiss on claims for which no proper meet
22  and confer occurred).  Courts regularly deny motions to dismiss where, as here,
    defendants did not send their meet and confer request until just one day before filing
23  their motion.  *See Govea v. Monrovia Unified School District*, Case No.: CV 17-
24  03093-AB (MRWx) 2018 WL 5915643 at **1-2 (C.D. Cal. June 19, 2018) (denying
    motion to dismiss where defendants did not send their meet and confer letter until
25  the day before filing their motion); *Access Ins. Co. v. Peralta*, No. SACV 15-622-
26  JLS (AJWx), 2015 WL 13036938, at *1 (C.D. Cal. Oct. 13, 2015) (striking motion
    to dismiss where movant faxed a meet and confer letter to opposing counsel the day
27  before filing the motion).  Plaintiffs do not even attempt to offer justification for
28  their delay, nor could any such delay be excusable here.

-5-

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

## III.   THE LEGAL STANDARD

A plaintiff need only make a prima facie showing of jurisdictional facts to avoid dismissal.  *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1118 (C.D. Cal. 2009).  The district court must accept uncontroverted allegations in the plaintiff's complaint as true, and resolve any factual conflicts in the plaintiff's favor.  *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).[4]

The Court need only determine whether personal jurisdiction in this case would meet the requirements of due process.  *Allstar,* 666 F. Supp. 2d at 1118; Cal. Code Civ. Proc. § 410.10.  Due process is met where the defendant has "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  "Minimum contacts" are established by "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).

---

[4]   In fact, a party may not rely on declarations in support of a motion to dismiss to contradict allegations in the operative pleading.  *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003) (plaintiff "need only demonstrate facts that, if true, would support jurisdiction over the Defendants" and "[u]nless directly contravened, [plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [plaintiff's] favor"); *Grisby v. DC 4400, LLC*, 2016 WL 7115903, at *4 n.1 (C.D. Cal. Dec. 5, 2016) ("the Court declines to consider [defendants'] second declaration in which he appears to dispute plaintiffs' factual allegations").  Thus Coddington's declaration, to the extent it conflicts with the pleadings in the Complaint, should be disregarded for the purposes of determining personal jurisdiction.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

## IV.  **THE COURT HAS JURISDICTION OVER DEFENDANTS**

### A.  **Coddington Consented to the Jurisdiction of this Court and to the Venue**

"Personal jurisdiction may rest entirely upon consent.  This is consistent with due process, even if a defendant does not otherwise have minimum contacts with the forum state." *IntelliCAD Tech. Consortium v. Suzhou Gstarsoft Co.*, 465 F. Supp. 3d 1130, 1137 (D. Or. 2020), citing *Burger King*, 471 U.S. at 472 n.14.  "Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, ... their enforcement does not offend due process." *Id.*

Here, Coddington entered in a valid agreement with Plaintiffs, which included a forum selection clause as follows:

> Choice of Forum. Licensor and Licensee (and their respective owners and guarantors if applicable) each agree that if litigation is permitted under this Agreement, the sole forum for litigation arising under this Agreement, or any aspect of their relationship between us (even if additional parties are named as parties to that litigation) will be an appropriate state or federal court in California, and both Licensor and Licensee waive any objections they may have to either the jurisdiction or the venue of such court (except to the extent jurisdiction is preempted by the arbitration provisions of this Agreement), and each of Licensor and Licensee consent to personal jurisdiction and venue in such court.  Notwithstanding the forgoing, if Licensor is permitted to seek injunctive relief under this Agreement, it may, at it option, bring that action in the county in which the Licensed Business is located.

Oines Decl. Ex. A at pg. 21.[5]

---

[5]  In ruling on a motion to dismiss, the Court may consider documents incorporated into the complaint by reference.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned").

1    Thus, Coddington has consented to, and waived the right to challenge,

2    jurisdiction and venue.

3    Defendants claim that this case does not "arise under" the license agreement,

4    but they misleadingly omit the most relevant portion of the parties' forum selection

5    clause, which states "or any aspect of their relationship." *See* Motion at pg. 5 ll. 4-7

6    (quoting the forum selection clause, but inserting an ellipses instead of the relevant

7    provision), pg. 17 ll. 13-16 (same).

8    "In federal question cases, the scope and enforceability of a forum-selection

9    clause is controlled by federal law." *IntelliCAD Tech.*, 465 F. Supp. 3d at 1137.

10   "The court must first consider the contract's plain language, with the understanding

11   that the common or normal meaning of the language will be given to the words of a

12   contract unless circumstances show that in a particular case a special meaning

13   should be attached to it." *Cooley v. Target Corp.*, No. SACV2000876DOCJDE,

14   2020 WL 7230985, at *3 (C.D. Cal. Oct. 12, 2020) (citation and quotations omitted).

15   "An interpretation which gives a reasonable, lawful and effective meaning to all the

16   terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or

17   of no effect." *Valley Children's Hosp. v. Athenahealth, Inc.*, No.

18   121CV01439JLTEPG, 2022 WL 1321416, at *3 (E.D. Cal. May 3, 2022), citing

19   Restatement (Second) of Contracts § 203 (1981).

20   "Forum selection clauses using embracing language are common and have

21   usually been construed broadly." *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 23 (1st

22   Cir. 2011). Thus, clauses like "relating to," "with respect to," or "in connection

23   with" have all been interpreted to include more than claims merely "arising out of"

24   an agreement. "Courts have often contrasted this language with narrower

25   language—*e.g.,* 'to enforce,' 'to construe'—that could easily have been employed if

26   a narrower focus were intended." *Id.*

27   The Ninth Circuit explicitly dealt with such embracing language in a forum

28   selection clause in *Yei A. Sun v. Advanced China Healthcare, Inc.*

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

1        "We have held that forum-selection clauses covering disputes
2        'arising out of' a particular agreement apply only to disputes
3        relating to the interpretation and performance of the contract
        itself. By contrast, forum-selection clauses covering disputes
4        'relating to' a particular agreement apply to any disputes that
5        reference the agreement or have some logical or causal
        connection to the agreement. The dispute need not grow out of
6        the contract or require interpretation of the contract in order to
        relate to the contract."

7

8  901 F.3d 1081, 1086-87 (9th Cir. 2018) (forum selection clause in Share Purchase

9  Agreement applied to fraud claims) (citations and quotations omitted; *see also*,

10  *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 21-22 (1st Cir. 2011) ("Huffington's

11  position would wear well if the clause encompassed only claims 'to enforce or for

12  breach of' this agreement, but the clause by its terms reaches any claim 'with respect

13  to' the agreement and easily invites a broader application").

14        And courts have regularly applied this reasoning in IP infringement cases.

15  *See Color Switch LLC v. Fortafy Games DMCC*, 818 F. App'x 694, 695-96 (9th Cir.

16  2020) (forum selection clause in agreement to publish mobile game applied to

17  copyright infringement claim because claims "aris[e] in connection" with the

18  agreement); *IntelliCAD Tech.*, 465 F. Supp. 3d at 1140 (dispute between owner of

19  computer source code and software designer for copyright infringement "relate to"

20  the parties' commercial membership agreement such that forum selection clause

21  applied); *Cooley*, 2020 WL 7230985, at *3 ("Because there is a logical connection

22  between this copyright dispute and the Agreement between N.O.C. and Defendant to

23  promote N.O.C.'s artwork, the Court finds that the forum selection clause controls");

24  *Nomadix, Inc. v. Guest-Tek Interactive Ent. Ltd.*, No. 219CV04980ABFFMX, 2020

25  WL 1032395, at *3 (C.D. Cal. Jan. 23, 2020) (forum selection clause covering

26  disputes "in connection with" license agreement applied to patent infringement

27  claims).

28        The phrase "or any aspect of their relationship" in the forum selection clause

1   here is even broader than those covering claims that "relate to" a particular
2   agreement.  Coddington had a license agreement with Plaintiffs to use their IP.
3   Coddington then used that IP outside of the scope of the agreement, triggering the
4   infringement claims at issue in this lawsuit.  Had the parties never entered into the
5   agreement, Coddington would never have had access to the IP in the first place.
6   These claims, therefore, necessarily, arise out of an "aspect" of the parties
7   relationship such that the forum selection clause must apply.

8           Defendants next try to argue that the clause should not apply because
9   Coddington did not submit to jurisdiction "as an individual independent from FPLS
10  and FPLS's licensed business."  Motion at pg. 17-18 ll. 25-4.  That is nonsensical
11  and ignores the language of the forum selection clause. Coddington does not deny
12  that he is bound as an individual by the forum selection clause. The only relevant
13  question, therefore, is whether the clause applies to this case.  The Court should
14  reject Coddington's effort to read something into the clause that does not exist.  *See*
15  *IntelliCAD Tech.*, 465 F. Supp. 3d at 1139 ("a fundamental rule of contract
16  construction [] prohibits inserting what has been omitted").  It would also be an
17  illogical reading of the contract to conclude that "owners" does not include an
18  individual.  Any "owner" who is a natural person is necessarily an individual.

19          "[T]he forum clause should control absent a strong showing that it should be
20  set aside," and the party resisting enforcement bears the heavy burden of
21  demonstrating why the clause should not be enforced."  *Huffington*, 637 F.3d at 23.
22  Coddington does not even attempt to make such showing here, and instead, merely
23  tried to hide the most important and dispositive part of the forum selection clause.

24          **B.      Defendants Cannot Escape the Court's Jurisdiction by Hiding**
25          **Behind a New Company**

26          Having established that the Court has jurisdiction over Coddington, he cannot
27  now avoid this jurisdiction simply by setting up another company to hide his
28  infringing actions.  Indeed, the company was the conduit by which Coddington

engaged in his misappropriation of Plaintiffs' IP and good will.  It is the company's website on which Coddington caused the infringement and false advertising that is the subject of this lawsuit.  Coddington acknowledges that he is the sole owner of FDLS and simply copied FPLS' website to create FDLS' new infringing website. Coddington Decl., ¶¶ 1, 15.

"[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."  *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) ("because Thoroughbred, Stepp, and Velocity are functionally *the same entity* in the eyes of the law, jurisdiction over that entity is appropriate after it has (wearing any one of its 'hats') voluntarily submitted to the personal jurisdiction of the court"); *see also*, *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1069 n. 17 (9th Cir. 2000) ("Because it appears, at the pleading stage, that Gatcombe is merely a shell that is entirely controlled by Wong's International, we disregard Gatcombe's separate identity for personal jurisdiction purposes"); *Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985) ("The precedents establish that a court which has jurisdiction over a corporation has jurisdiction over its alter egos"); *Huth v. Hillsboro Ins. Mgmt., Inc.*, 72 F. Supp. 2d 506, 510 (E.D. Pa. 1999) (attributing the acts of a predecessor corporation to its successor for purposes of determining jurisdiction over the successor).

"No all embracing rule has been laid down under which the relationship between two corporations may be determined. The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under its long arm statute." *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE

637 (8th Cir. 1975) (citations omitted).

Plaintiffs have a valid License Agreement with FPLS, which is owned and operated by Coddington. Motion at pg. 4 l. 21. Defendants' vaguely claim that FDLS "was set up in January 2023 to focus on drain line service." *Id*. at pg. 5 l. 25 Notably, Defendants do not mention *who* set up FDLS. In fact, FDLS has the same principal place of business as FPLS. Oines Decl., Ex. C and D.[6] FDLS has the same manager as FPLS (Coddington). *Id*. And, FDLS has the same executive vice president as FPLS. *Id*. By Defendants' own explanation of how FDLS was started, it appears the FDLS does not have its own business or operations, but exists merely as an off-shoot of FPLS. In other words, Coddington broke off from FPLS in order to continue infringing Plaintiffs' intellectual property under the guise of a new company. This underhandedness should not be permitted to stand and certainly cannot allow Defendants to forum shop and avoid the court to which the parties agreed.

## C.    Even Setting Aside the forum Selection Clause, the Court has Personal Jurisdiction over Defendants.

The Court also has personal jurisdiction over Defendants separate from the forum selection clause in the License Agreement by virtue of their contacts with the state in executing and maintaining a long-term franchise agreement with a California company.

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the

---

[6]    In ruling on a motion to dismiss, the Court may consider matters properly subject to judicial notice. *See Swartz*, 476 F.3d at 763; *Ukpan v. AT&T Mobility Servs., LLC*, No. 219CV08112VAPJEMX, 2020 WL 11039193, at *2 (C.D. Cal. Apr. 6, 2020) ("Although the scope of review is limited to the contents of the complaint, the Court may … "take judicial notice of matters of public record outside the pleadings") (emphasis removed).

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities[.]"  *Burger King*, 471 U.S. at 472-73 (citation omitted).

The Ninth Circuit applies a three-prong test to determine whether a court has specific jurisdiction over a defendant:

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."

*Allstar*, 666 F. Supp. 2d at 1118, *citing Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### 1.   Defendants have availed themselves of the privilege of conducting activities in California.

"[W]ith respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  *Burger King*, 471 U.S. at 473.  Thus, where a defendant "has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."  *Id*. at 475-76 (citations omitted).

*Burger King* is instructive here.  In *Burger King*, the franchisor Burger King

sued the defendant franchisee for breach of contract and trademark infringement for continuing to operate a Burger King franchise after the termination of the franchise agreement. *See id.* at 468. Burger King sued the defendant in Florida, where Burger King is headquartered, and the Michigan-based defendant sought to dismiss for lack of personal jurisdiction. The Supreme Court expressly rejected the notion that physical presence in the forum state is required for personal jurisdiction, recognizing that in modern times, "a substantial amount of business is transacted" remotely. *Id.* at 476. The Supreme Court ultimately held that there was personal jurisdiction over the defendant, as follows:

> "In this case, no physical ties to Florida can be attributed to [defendant] … [he] did not maintain offices in Florida and, for all that appears from the record, has never even visited there. Yet this franchise dispute grew directly out of 'a contract which had a *substantial* connection with that State.' Eschewing the option of operating an independent local enterprise, [defendant] deliberately 'reached out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization. Upon approval, he entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida … [defendant's] continued use of Burger King's trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida. For these reasons it was, at the very least, presumptively reasonable for [defendant] to be called to account there for such injuries."

*Id.* at 479-80; *see also, Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 789 (9th Cir. 1987) ("There can be no question but that Melcher, in forming a long-term franchise relationship with CIBB 'purposely directed' commercial activities to Arizona, thereby 'purposely availing' itself of Arizona benefits. The district court correctly determined that Melcher had sufficient contact with Arizona").

Just like in *Burger King*, Defendants reached out to California to enter into

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

long-term franchise agreement with Plaintiffs.  Defendants could have opted to operate an independent local franchise, but instead chose to reach beyond Florida, to enter into an agreement with Plaintiffs for over 10 years, which would create continuing contacts with Plaintiffs in California.  Coddington even signed a further addendum to extend the terms in the License Agreement for a period of 10 years. Coddington Decl. ¶ 11; Oines Decl. Ex. D.  Pursuant to the License Agreement, FPLS pays a royalty and makes advertising contributions to ACE while ACE provides training, equipment, systems, epoxy, advertising and other assistance for the benefit of FPLS's licensed business.  Complaint ¶ 20.  And, Defendants expected to use California to enforce any claims relating to the License Agreement by virtue of the forum selection clause in that agreement.  Moreover, Defendants' continued, improper use of Plaintiffs' IP caused foreseeable injuries to Plaintiffs in California, so it is presumptively reasonable for Defendants to be called to account for these actions in California.  Having taken advantage of the privilege of doing business in California and with California residents, Defendants cannot now avoid jurisdiction within California.

### 2. Plaintiffs' injuries arise out of Defendants' forum-related activities.

"A lawsuit arises out of a defendant's contacts with the forum state if there is a direct nexus between the cause of action being asserted and the defendant's activities in the forum.  The Ninth Circuit has adopted a "but for" test when assessing whether an action arises out of a defendant's contacts with the forum state." *Allstar*, 666 F. Supp. 2d at 1123 (citations omitted).  This lawsuit arises out of Defendants' contacts with Plaintiffs in California because, but for the License Agreement, Defendants would not have had access to Plaintiff's IP, the infringement of which forms the basis for this lawsuit.

### 3. The exercise of jurisdiction would not be unreasonable.

Given that Defendants purposefully directed their activities to California and

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

this suit arises out of those contacts, the burden shifts to Defendants to show that the exercise of jurisdiction would be unreasonable. *Id.* at 1118 ("The plaintiffs bear the burden of satisfying the first two prongs of this test. If they do, the burden then shifts to the defendants to present a compelling case that the exercise of jurisdiction would not be reasonable") (citations and quotations omitted); *see also*, *Burger King*, 471 U.S. at 477 ("where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable").  Defendants have not, and cannot, meet this burden.

Defendants generally claim that they would be "subjected to unreasonable burden and substantial hardship" if forced to defend in California "given the location of witnesses, particularly third parties, in Florida."  Motion at 12.  Any supposed burden on Defendants, however, should not carry much weight.  "The financial burden of litigating in a distant forum is unlikely to be substantial for any of the parties, however, considering the availability of e-filing and telephonic appearances."  *Allstar*, 666 F. Supp. 2d at 1124; *see also, Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc.*, 733 F. Supp. 2d 204, 211 (D. Mass. 2010) ("Requiring alleged infringers such as MIE to bear the burden of traveling to a forum in which their voluntary actions have caused foreseeable injury encourages them to consider this burden before they act").  Any supposed burden on third party witnesses is likewise unpersuasive.  *See Allstar*, 666 F. Supp. 2d at 1124 ("This factor is no longer weighed heavily, however, given the modern advances in communication and transportation") (quotations omitted).  And counter-balancing this argument is the fact that Plaintiffs' witnesses are primarily located in California. *See id.* ("While defendants contend that their witnesses and evidence are located primarily in Wisconsin, plaintiffs contend that their witnesses and evidence are located primarily in California. Consequently, this factor is neutral in assessing whether exercising jurisdiction over defendants is reasonable").  Moreover,

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

Defendants fail to identify a single third party who would need to be called in this case, or even to explain why any third party Florida witness would be necessary. "[T]he problems confronting [defendants] are identical to those that most parties who defend actions outside their home states – they and their witnesses must travel to distant fora.  [Defendants were] required to present *compelling* reasons in support of [their] claim that jurisdiction … is unreasonable.  This [they] do not do." *Corp. Inv. Bus. Brokers*, 824 F.2d at 791 (citations omitted) (emphasis in original).

California also has an interest in litigating intellectual property disputes of its residents, and where the injury occurred.  *See Allstar*, 666 F. Supp. 2d at 1124 ("California has a strong interest in protecting its citizens from trademark infringement and consumer confusion") (citation and quotations omitted).  And, it would be more efficient for California to continue litigating any future disputes that arise out of Plaintiffs' IP and Plaintiffs' many franchise agreements.  *See R. Griggs Grp. Ltd. v. Consol. Shoe, Inc.*, 1999 WL 226211, at \*5 (N.D. Cal. Apr. 9, 1999) (Cited in Motion) ("Even though each case may involve different defendants, litigation in many fora wastes judicial resources, the resources of a plaintiff who is forced to hire and educate multiple legal counsel, and risks inconsistent results.")

## D.   <u>Even Setting Aside the forum Selection Clause, Venue is Proper in this District</u>

The parties have already waived the right to challenge venue in the License Agreement, as discussed in Section IV.A, *supra*.  Moreover, venue is also proper in this district because the Court has personal jurisdiction over Defendants, and many of the events giving rise to Plaintiffs' claims occurred in this district.

For Plaintiffs' copyright claims, venue is proper under 28 U.S.C. § 1400(a), which provides that civil copyright disputes "may be instituted in the district in which the defendant or his agent resides or may be found."  The Ninth Circuit has interpreted this statute to mean that venue "is proper in any judicial district in which the defendant would be amenable to personal jurisdiction[.]"  *Columbia Pictures*

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

1   *Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 288 (9th Cir.

2   1997), rev'd on other grounds.  Since both Defendants are subject to personal

3   jurisdiction in California, as explained above, venue is proper in this district as well.

4   *See also*, *Berklee Coll. of Music*, 733 F. Supp. 2d at 211-12 ("Courts have uniformly

5   held that venue is proper whenever personal jurisdiction may be obtained under the

6   applicable state long-arm statute thereby collapsing the two concepts into one. This

7   concept applies to individuals as well as to corporations").

8          Venue is also proper on Plaintiffs' remaining claims because, as explained

9   above, a substantial part of the events giving rise to Plaintiffs' claims occurred in

10  this district.  28 U.S.C. § 1391(b).  This district is where the parties entered into the

11  License Agreement which gave Defendants access to Plaintiffs' IP in the first place.

12  *See Int'l Paper Co. v. Goldschmidt*, 872 F. Supp. 2d 624, 633–34 (S.D. Ohio 2012)

13  ("a court should not focus only on those matters that are in dispute or that directly

14  led to the filing of the action, but rather, it should review the entire sequence of

15  events underlying the claim").  This district is also where Plaintiffs have suffered

16  harm, and will continue to suffer harm.  *See Berklee Coll. of Music*, 733 F. Supp. 2d

17  at 209 ("injury from trademark infringement occurs within the forum in which the

18  trademark owner is located").

19         "The plaintiff is not required to establish that his chosen venue has the most

20  substantial contacts to the dispute; rather, it is sufficient that a substantial part of the

21  events occurred [here], even if a greater part of the events occurred elsewhere …

22  Venue may be proper in more than one district, and a plaintiff has no obligation to

23  file in the most convenient forum, only in a proper forum."  *Nat'l Council on Comp.

24  Ins., Inc. v. Caro & Graifman, P.C.*, 259 F. Supp. 2d 172, 177 (D. Conn. 2003)

25  (citations and quotations omitted); *see also*, *Johns v. Newsmax Media, Inc.*, 887 F.

26  Supp. 2d 90, 96 (D.D.C. 2012) ("In ruling on a motion to dismiss for lack of venue,

27  the question is not which district is the 'best' venue, or which venue has the most

28  significant connection to the claim. The question is whether the district the plaintiff

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

1   chose had a substantial connection to the claim, whether or not other forums had

2   greater contacts.") (citations and quotations omitted);  *Int'l Paper*, 872 F. Supp. 2d

3   at 633-34 ("The issue presented under § 1391(a)(2) is not whether this district is the

4   'best' venue, but whether the district has a 'substantial' connection to plaintiffs'

5   claims, even if other districts have greater contacts") (citations and quotations

6   omitted).  For the purposes of Defendants' Motion, therefore, it is irrelevant whether

7   venue may also have been proper in Florida because it is proper in this district.

8   **V.      TRANSFER OF VENUE IS NOT WARRANTED**

9         **A.      Defendants Have Waived Their Right to Argue *Forum Non***

10              ***Conveniens* Through the Forum Selection Clause.**

11         While in the typical case, a district court considering a *forum non*

12   *conveniens* motion will weigh both the convenience of the parties and various

13   public-interest considerations, "[t]he calculus changes, however, when the parties'

14   contract contains a valid forum-selection clause, which 'represents the parties'

15   agreement as to the most proper forum.'"  *Atl. Marine Const. Co. v. U.S. Dist. Ct.*

16   *for W. Dist. of Texas*, 571 U.S. 49, 62–63 (2013) (citation omitted).  After *Atl.*

17   *Marine*, a valid forum selection clause should be "given controlling weight in all but

18   the most exceptional cases."  *Id.*

19         Thus, in evaluating a motion to transfer involving a forum selection clause, a

20   court should not consider arguments about the parties' interests.  "When parties

21   agree to a forum-selection clause, they waive the right to challenge the preselected

22   forum as inconvenient or less convenient for themselves or their witnesses, or for

23   their pursuit of the litigation."  *Id.* at 64.  "As a consequence, a district court may

24   consider arguments about public-interest factors only.  Because those factors will

25   rarely defeat a transfer motion, the practical result is that forum-selection clauses

26   should control except in unusual cases."  *Id.*  "[C]ourts must enforce a forum-

27   selection clause unless the contractually selected forum affords the plaintiffs no

28   remedies whatsoever."  *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d

1  1081, 1091-92 (9th Cir. 2018).

2      Because Defendants have agreed to the forum selection clause, that clause

3  should be given determinative weight and Defendants cannot now claim that this

4  district – the selected forum – would be inconvenient for them.  There is nothing

5  unusual in this case to warrant setting aside the parties' chosen forum.

6      **B.    Even Setting Aside the Forum Selection Clause, Defendants**

7           **Cannot Show that Transfer is Warranted.**

8      In any event, Defendants cannot show that a transfer of venue is warranted,

9  even irrespective of the forum selection clause.

10      "The burden is on the moving party to establish that a transfer will allow a

11  case to proceed more conveniently and better serve the interests of justice … it is not

12  enough that the defendant would prefer another forum, nor is it enough merely to

13  show that the claim arose elsewhere. And, not surprisingly, transfer will not be

14  ordered if the result is merely to shift the inconvenience of where the action is

15  located from one party to another" *Allstar*, 666 F. Supp. 2d at 1131.  Courts weigh

16  the following factors on a motion to transfer:  "(1) the plaintiff's choice of forum;

17  (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the

18  location of books and records; (5) which forum's law applies; (6) the interests of

19  justice; and (7) administrative considerations." *Id*. at 1130.

20      First, Plaintiffs have chosen this forum.  While Defendants claim that this

21  factor should not be given much weight where a plaintiff engages in forum

22  shopping, that is not the case here.  Plaintiffs reasonably chose this forum pursuant

23  to the License Agreement and as the forum in which Plaintiffs are located and their

24  business agreements are handled.  Defendants' cited case is not to the contrary and,

25  in fact, supports giving deference to this factor. *See Plexxikon Inc. v. Novartis*

26  *Pharms. Corp.*, No. 17-CV-04405-HSG, 2017 WL 6389674, at *3 (N.D. Cal. Dec.

27  7, 2017) ("In this case, Plaintiff's choice of forum in this District is entitled to great

28  weight.  Because this is Plaintiff's home turf, this is not a case in which its choice of

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

1    venue might be entitled to less deference") (citations and quotations omitted).

2    Because Plaintiffs are located in California, it is also more convenient for the

3    litigation to take place here.

4         Just as they do with their jurisdictional argument, Defendants once again

5    make vague claims about the convenience of other witnesses, whom they claim

6    would all be in Florida.  Motion at 20.  "[I]f the transfer is for the convenience of

7    witnesses, defendant must name the witnesses it wishes to call, the anticipated areas

8    of their testimony and its relevance, and the reasons why the present forum would

9    present a hardship to them."  *Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F.

10   Supp. 2d 957, 963 (C.D. Cal. 2005) ("In this case, the defendant has failed to make

11   such a showing, instead supporting its motion with mere conclusory allegations");

12   *see also*, *Allstar*, 666 F. Supp. 2d at 1133 ("Because none of the parties has

13   identified non-party witnesses, this factor adds little to the court's analysis.

14   Certainly, defendants have not demonstrated that the factor favors transfer").

15   Defendants fail to identify a single third party witness in Florida, so this factor

16   cannot carry any weight.

17        Defendants similarly fail to identify any records or documents likely to be

18   located in Florida.  *See Bohara*, 390 F. Supp. 2d at 963 ("if the motion is based on

19   the location of records and documents, the movant must show particularly the

20   location, difficulty of transportation, and the importance of such records").

21        As for the remaining factors, Defendants agree that these are all neutral

22   (Motion at 20), which is consistent with how courts in this district consider such

23   factors.  *See Allstar*, 666 F. Supp. 2d at 1133 ("As plaintiffs' claims are primarily

24   federal trademark and copyright claims, however, the factor carries little weight.

25   Courts … are equally capable of applying federal law."), at 1134 ("Administrative

26   considerations such as docket congestion are given little weight in this circuit").

27        Thus, the only factor carrying any weight under this analysis is Plaintiffs'

28   choice of forum and Plaintiffs have chosen this Court.  That selection should be

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER VENUE

1   allowed to stand.

2   **VI.**   <u>**CONCLUSION**</u>

3       In light of the foregoing, the Court should deny Defendants' Motion to

4   Dismiss or Transfer Venue in its entirety.  In the event the Court is inclined to grant

5   the Motion with respect to either defendant, it should do so with leave to amend.

6

7   Dated:  March 30, 2023                RUTAN & TUCKER, LLP
                                  RONALD P. OINES

8                                   TALYA GOLDFINGER

9                               By: _____ */s/ Ronald P. Oines*

10                                 Ronald P. Oines
                                  Attorneys for Plaintiffs PIPE

11                                   RESTORATION TECHNOLOGIES,
                                  LLC and ACE DURAFLO

12                                   SYSTEMS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>Certificate of Compliance</u>

The undersigned, counsel of record for Plaintiffs Pipe Restoration
Technologies, LLC and Ace Duraflo Systems, LLC, certifies that this brief contains
6,450 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 30, 2023                                        RUTAN & TUCKER, LLP
                                                              RONALD P. OINES
                                                              TALYA GOLDFINGER

                                              By:_____/s/ Ronald P. Oines_____
                                                              Ronald P. Oines
                                                              Attorneys for Plaintiffs PIPE
                                                              RESTORATION TECHNOLOGIES,
                                                              LLC and ACE DURAFLO
                                                              SYSTEMS, LLC

3074/022688-0085
18977344.1 a03/30/23                    -23-